A95A2598. ECKERD CORPORATION v. FAYETTE COUNTY BOARD OF TAX ASSESSORS.
(469 SE2d 285)

BLACKBURN, Judge.

The Eckerd Corporation appeals the order of the trial court finding it in contempt of court, and, as punishment, directing it to pay the sum of $750 to the Fayette County Board of Tax Assessors (Board) for failure to produce certain tax records in accordance with a Board subpoena issued pursuant to OCGA § 48-5-300 (a).

The record reflects that the Board subpoenaed Eckerd's 1992 through 1994 personal property tax returns. Eckerd refused to release such records in the absence of the Board's assurances that they would not be made available to Mendola & Associates, a company under contract to the Board to audit such taxpayers as designated by the Board and also under contract to provide similar services to other county tax assessors. Upon Eckerd's refusal to comply with the subpoena unconditionally, the Board voted unanimously to require Eckerd to appear before the trial court to show cause why it should not be punished for contempt.

1. Eckerd contends that the Board's subpoena is improper as an audit for the purpose of assessing additional personal property taxes against it. We disagree.

It is well-settled that tax assessors may assess unreturned tangible property for ad valorem tax purposes during the applicable seven-year period of limitation. *Ga. R. &c. Co. v. Wright*, 124 Ga. 596, 599 (53 SE 251) (1905); *Suttles v. Dickey*, 192 Ga. 382, 383 (15 SE2d 445) (1941); *Garr v. E. W. Banks Co.*, 206 Ga. 831, 832 (59 SE2d 400) (1950); and see generally Op. Atty. Gen. U87-13. In this regard,

OCGA § 48-5-299 (a) pertinently provides that it is "the duty of the county board of tax assessors to . . . ascertain[ ] what real and personal property is subject to taxation in the county and to require the proper return of the property for taxation." It further provides that "[i]n all cases where the full amount of taxes due the state or county has not been paid, the board shall assess against the owner, if known, and against the property, if the owner is not known, the full amount of taxes which has accrued and which may not have been paid at any time within the statute of limitations." OCGA § 48-5-305 (a), in turn, authorizes county boards of tax assessors to determine the manner of ascertaining the assessment of any real or personal property not appearing in the digest for any time within the period of limitation. As the proposed audit is directed not at reassessing property already valued, and upon which taxes have already been paid, but rather is directed at the discovery of property, if any, which has not been returned and upon which taxes have not been paid, it is a proper means of determining unreturned property tax liability at any time within the applicable seven-year period of limitation. Accordingly, we deem this enumeration of error to be without merit.

2. Eckerd further enumerates that the trial court erred by finding that the Board properly contracted Mendola to provide it audit services. In this regard, Eckerd argues that having Mendola audit its personal property was an impermissible delegation of the Board's assessment duty found in OCGA § 48-5-298 (a) and improper as violative of its right to confidentiality under OCGA § 48-5-314 in that Mendola was under contract to provide similar services to other county boards of tax assessors.

The Supreme Court of Georgia has held that OCGA § 48-5-298 (a) (3) "expressly allows the Board . . . to contract with entities, such as [Mendola], to '(s)earch out and appraise unreturned properties in the county.' " *Sears, Roebuck & Co. v. Parsons*, 260 Ga. 824, 825 (401 SE2d 4) (1991). The Board properly contracted for Mendola's services in order to aid it in discovering unreturned and untaxed property, not to aid it in further taxing property already assessed. Division 1, supra. No delegation of the Board's duty to require the proper return of personal property for taxation is indicated in the record. There being no delegation of the Board's authority and audit services having been properly contracted, the claim that the Board impermissibly delegated its authority cannot stand.

Eckerd's confidentiality argument is flawed as well. OCGA § 48-5-314 (a) (1) allows personnel authorized by appropriate tax administrators to access materials otherwise protected as confidential thereunder. It is settled that boards of tax assessors have authority to contract for audit services. OCGA § 48-5-298 (a) (3); *Sears, Roebuck*, supra. It necessarily follows that to enter into such a contract "autho-

rizes" the contractor access to confidential materials essential to the performance of the contract. Significant as well, the Board's authority to contract for services in OCGA § 48-5-298 (a) is not restricted to persons or entities not otherwise under contract to provide such services. In this regard, OCGA § 48-5-298 (b) permits county boards of tax assessors to enter into contracts "with any municipality or political subdivision of the state to provide any information for which the board could contract pursuant to subsection (a)" thereof. Further, while OCGA § 48-5-314 (a) (1) allows authorized personnel access to confidential materials, subsection (b) makes the disclosure of confidential materials to unauthorized persons subject to a civil penalty not to exceed $1,000. Thus, in the absence of Mendola's disclosure of confidential materials to unauthorized persons, no breach of the duty of confidentiality arises. Such a claim is not before us. Accordingly, we deem this enumeration of error to be without merit.

3. Eckerd last contends that the trial court erred by awarding the Board attorney fees in that such fees are impermissible as punishment for contempt.

It is uncontroverted in the record that the trial court found Eckerd in contempt of court for failure to comply with the Board's subpoena and punished the contempt by its order directing Eckerd to pay the Board its attorney fees of $750. Attorney fees are not authorized by law for contempt. OCGA § 15-6-8; *Ragsdale v. Bryan*, 235 Ga. 58, 59 (218 SE2d 809) (1975); *Carter v. Carter*, 241 Ga. 335, 336 (245 SE2d 292) (1978). We conclude that the trial court did not err in holding Eckerd in contempt, but did err in imposing attorney fees as punishment therefor. Accordingly, we affirm the judgment with direction that the amount awarded as attorney fees be stricken. *Ragsdale*, supra.

*Judgment affirmed with direction. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Smith and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

While I agree with much of the majority opinion, I cannot agree with the majority's construction of the confidentiality provisions contained in OCGA § 48-5-314 (a) (1). This statute does not, as stated in the majority opinion, allow "personnel authorized by appropriate tax administrators to access materials otherwise protected as confidential thereunder." In reality, the statute provides that confidential materials "shall not be subject to inspection by any person other than authorized personnel of appropriate tax administrators." Id. In short, the statute permits access to confidential materials by a limited group of public officials and employees. In my view, the majority opinion is incorrect in holding that the confidential materials may be distrib-

uted to an independent contractor who is generally beyond the control and supervision of the "appropriate tax administrators."

The issue in the present case is further clouded by the references in the majority opinion to the sharing of information between county boards of tax assessors and various political subdivisions of the state under OCGA § 48-5-298 (b). The information which may be exchanged under that provision is limited to that which a board could contract to obtain under OCGA § 48-5-298 (a) and is not the same as the confidential materials identified under OCGA § 48-5-314 (a) (1).

Further ambiguity enters this case through the use of the term "audit." This is a familiar and broad term, but too broad for precise communication relating to the circumstances in the case sub judice. Eckerd Corporation has filed its personal property tax return and paid its taxes for the years in question. Despite some slip of the tongue or faulty logic on the part of the Board's counsel which suggested otherwise during the argument of the contempt motion, the superior court has concluded that this case deals exclusively with a search for unreturned property as opposed to an attempt to reassess those properties upon which taxes have already been paid. Under *Sears, Roebuck & Co. v. Parsons*, 260 Ga. 824 (401 SE2d 4), the Fayette County Board of Tax Assessors is clearly authorized, subject to the approval of the county governing authority, to contract with a third party to conduct such a search. But there is undoubtedly no express authority for providing confidential materials to a third party independent contractor. Nor do I agree with the majority opinion that such an authority to distribute confidential materials "necessarily follows" the authority to contract for the search for unreported property.

The legislature is the proper body to weigh the utility of conveying confidential materials to independent third parties against the harm which may result to a business from overly broad distribution of its confidential financial data and proprietary business information. Since the legislature has carefully restricted access to confidential materials submitted to the county board of tax assessors, I am reluctant to unduly expand the distribution of this information. In the absence of any evidence on the issue, the majority opinion assumes access to the confidential materials is essential to the performance of an independent third party's contract to search for unreported property. This does not appear to be self-evident to me. Such speculation only emphasizes the hazards of deviating from a strict construction of this statute. I would hold that the furnishing of confidential materials obtained from Eckerd Corporation to Mendola & Associates would be a violation of OCGA § 48-5-314 (a) (1). (Any further distribution of the confidential materials by Mendola & Associates may also be prohibited by the statutory scheme.) Since the purpose of the subpoena at

issue is to obtain confidential materials to be distributed in this inappropriate manner, the subpoena should have been quashed.

Consequently, I would hold the trial court erred and the case sub judice should be reversed.

DECIDED FEBRUARY 8, 1996 —
RECONSIDERATION DENIED MARCH 6, 1996 —

*Alston & Bird, G. Conley Ingram, Timothy J. Peaden*, for appellant.

*McNally, Fox & Cameron, Dennis A. Davenport*, for appellee.