## A00A2494. FULTON COUNTY BOARD OF ASSESSORS v. SAKS FIFTH AVENUE, INC.

(547 SE2d 620)

BLACKBURN, Chief Judge.

The Fulton County Board of Assessors (Board) appeals the trial court's grant of Saks Fifth Avenue, Inc.'s (Saks) motion for a protective order in connection with a personal property tax audit of its Fulton County location for tax years 1995 through 1998. The order allowed Saks to withhold confidential documents subpoenaed by the Board until such time as Mendola & Associates, LLC (Mendola), the private accounting firm hired by the Board to conduct the audit, entered into a confidentiality agreement concerning such documents with Saks.

In seven enumerations of error, the Board raises the following three arguments: (1) The trial court erred in granting Saks' motion for protective order because the confidentiality of the subpoenaed documents is protected under OCGA § 48-5-314, under the employment contract between Mendola and Fulton County, and by Mendola's responsibilities as a certified public accounting firm; (2) The trial court erred in finding both that Saks was not in contempt for failure to honor the Board's OCGA § 48-5-300 subpoena and that Saks' fear of disclosure of the confidential documents to third parties constituted a legal excuse which relieved it from complying with the subpoena; and (3) The trial court erred in failing to follow *Wal-Mart Stores v. Bd. of Tax Assessors of Fayette County*[1] and in ignoring the public policy implications of its ruling.

These issues turn on the underlying question of the authority of the Board to require the production of a taxpayer's confidential documents for investigative purposes. Also in question is the Board's right to seek contempt sanctions as a result of Saks' failure to honor the subject subpoena under the facts herein and the general authority of

---

[1] *Wal-Mart Stores v. Bd. of Tax Assessors of Fayette County*, 246 Ga. App. 161 (539 SE2d 869) (2000).

the trial court to issue a protective order. For the reasons set forth below, we vacate the trial court's ruling and remand the case for further proceedings consistent with this opinion.

Turning to the facts, Saks, an Alabama corporation, operates a department store in Fulton County, Georgia. In June 1999, the Board notified Saks that it was going to conduct a personal property audit of Saks' personal property tax returns for tax years 1995 through 1998. The Board assigned the audit to Mendola, an accounting firm with whom it had a contract to conduct such audits.

The Board is authorized to make such investigation as may be necessary to inquire into real and personal property owned in the county, to determine upon which such property all taxes due the state or the county have not been paid in full. See OCGA § 48-5-299. The Board is authorized to enter into employment contracts with persons, subject to the approval of the county governing authority, to assist the Board in the mapping, platting, cataloging, indexing, and appraising of taxable properties in the county; to make, subject to the approval of the Board, reevaluations of taxable property in the county; and to search out and appraise unreturned properties in the county. See OCGA § 48-5-298. In *Eckerd Corp. v. Fayette County Bd. of Tax Assessors*,[2] this court, relying upon our Supreme Court's holding in *Sears, Roebuck & Co. v. Parsons*,[3] affirmed the right of the board of tax assessors to contract for third-party services pursuant to OCGA § 48-5-298.

In conducting the audit, Mendola requested that Saks produce certain financial and proprietary information or copies thereof. We note that Mendola, when acting as the agent of the Board, has no greater authority than the law provides to the Board. Saks responded that it would do so only if Mendola would sign a confidentiality agreement to protect the information. Saks sought agreement by Mendola that it would not disclose any information obtained by Mendola from it to any third parties and that Mendola would not use such information for any purposes other than conducting the subject audit, which conduct is prohibited by statute. Saks also requested that the Board and Mendola would return to Saks all information provided by it once the audit was completed. While this document return is not specifically required by statute, any other use of such documents or disclosure to third parties would be a violation of the law. Mendola refused to sign the agreement and insisted that Saks produce the documents although it had no lawful authority to do so.

Because Saks would not turn over the proprietary documents

---

[2] *Eckerd Corp. v. Fayette County Bd. of Tax Assessors*, 220 Ga. App. 454, 455 (469 SE2d 285) (1996).

[3] *Sears, Roebuck & Co. v. Parsons*, 260 Ga. 824, 825 (401 SE2d 4) (1991).

Mendola wished to review, the Board then served Saks with a subpoena, pursuant to OCGA § 48-5-300 (a) (1), in the nature of a discovery vehicle, for the production of the documents which Mendola wished to review in connection with Fulton County personal property account no. 0015407 and what the subpoena described simply as "a matter there pending."

No on-premise review of documents had been attempted at that time, and no claim has been made by the Board evidenced through the record of this appeal of any failure of Saks to report property or to pay taxes. There was no hearing scheduled at 9:00 a.m. on October 14, 1999, the time the production of the proprietary documents was required at the Fulton County Board of Assessors' Office, 141 Pryor Street, S.W., Suite 1047, Atlanta, Georgia 30303, under the subpoena. This was the only location at which the taxpayer could be required to produce any lawfully required documents.

It is clear that no hearing was in fact scheduled in connection with the subject subpoena. The subpoena refers to no hearing, and the record contains no notice to the taxpayer of the claims of the Board as to taxes owed or laws violated, the subject matter of the hearing, or the date thereof. The due process clauses of U. S. Const., Amend. XIV, and Ga. Const. 1976, Art. I, Sec. I, Par. I (see Ga. Const. 1983, Art. I, Sec. I, Par. I) require notice and a hearing by an administrative agency before any action may be taken which affects a citizen's constitutional or property rights, even though the Act granting the right to the Board provides for an appeal to the superior court. 1958-1959 Op. Atty. Gen. 1.

The Board has only that authority provided by law to access a taxpayer's confidential business records in the conduct of its on-premise investigative audit pursuant to OCGA § 48-5-299 or to subpoena those records authorized by OCGA § 48-5-300 to any lawfully scheduled hearing, meeting the requirements of due process. The Board has no statutory authority to issue subpoenas for discovery purposes in connection with tax audits pursuant to OCGA § 48-5-299 or to require a taxpayer to produce copies of such records for the use of the Board, except by subpoena to a lawfully scheduled hearing. A taxpayer is free to voluntarily provide copies of its records in the manner requested by the Board if it wishes to do so; however, the Board is not authorized to require the wholesale production of copies of a taxpayer's documents for the purpose of an off-premise fishing expedition into the affairs of the taxpayer. Discovery under the Civil Practice Act does not apply to a proceeding under the Administrative Procedure Act and is not otherwise authorized by law in this matter.

See *Hewes v. Cooler;*[4] *Ga. State Bd. of Dental Examiners v. Daniels.*[5]

The Board's authority to require production of documents by a taxpayer, other than the on-premise inspection of records it is lawfully authorized to conduct pursuant to OCGA § 48-5-299, is limited to the production of documents pursuant to OCGA § 48-5-300, which provides:

> (a) (1) Except as otherwise provided in paragraph (2) of this subsection, the county board of tax assessors may issue subpoenas for the attendance of witnesses and may subpoena of any person any books, papers, or documents which may contain any information material to any question relative to the existence or liability of property subject to taxation or to the identity of the owner of property liable to taxation or relevant to other matters necessary to the proper assessment of taxes lawfully due the state or county. Such subpoenas may be issued in the name of the board, shall be signed by any one or more members of the board or by the secretary of the board, and shall be served upon a taxpayer or witness or any party required to produce documents or records five days before the day upon which any hearing by the board is scheduled at which the attendance of the party or witness or the production of such documents is required. (2) The authority provided for in paragraph (1) of this subsection shall not apply to the following documents or records: (A) Any income tax records or returns; (B) Any property appraisals prior to the appeal process; (C) All insurance policies; or (D) Any individual tenant sales information. (b) If any witness subpoenaed by any county board of tax assessors fails or refuses to appear, fails or refuses to answer questions propounded, or fails or refuses to produce any books, papers, or documents required to be produced by an order of the board, except upon a legal excuse which would relieve the witness of the obligation to attend as a witness or to produce such documents before the superior court if lawfully required to do so, the person so failing or refusing shall be guilty of contempt and shall be cited by the board to appear before a judge of the superior court of the county. The judge of the superior court of the county shall have the same power and jurisdiction to punish the person failing or refusing to comply with the order for contempt and to require and compel the giving of the testimony or the production of the

---

[4] *Hewes v. Cooler,* 169 Ga. App. 762 (315 SE2d 276) (1984).
[5] *Ga. State Bd. of Dental Examiners v. Daniels,* 137 Ga. App. 706 (224 SE2d 820) (1976).

books and records as in cases of contempt committed in the presence of the court and as in cases pending in the court.

The Board's use or possession of a taxpayer's personal, confidential records is limited to that use which is authorized during the period of the audit and any hearing or appeal thereafter or in connection with the collection of taxes deemed to be owed by such taxpayer. The Board is entitled to retain only those copies of the taxpayer's records as provided by law. Any other use of the taxpayer's personal, confidential records or the disclosure to third parties is prohibited by law. OCGA § 48-5-314 provides inter alia:

(a) (1) All records of the county board of tax assessors which consist of materials other than the return obtained from or furnished by an ad valorem taxpayer shall be confidential and shall not be subject to inspection by any person other than authorized personnel of appropriate tax administrators. As an illustration of the foregoing, materials which are confidential shall include, but shall not be limited to, taxpayers' accounting records, profit and loss statements, income and expense statements, balance sheets, and depreciation schedules. Such information shall remain confidential when it is made part of an appeal file. Nothing in this Code section, however, shall prevent any disclosure necessary or proper to the collection of any tax in any administrative or court proceeding. (2) Records which consist of materials containing information gathered by personnel of the county board of tax assessors, such as field cards, shall not be confidential and are subject to inspection at all times during office hours. The provisions of this paragraph shall not remove the confidentiality of materials such as are specified in paragraph (1) of this subsection. . . . (b) Any person who knowingly and willfully furnishes information which is confidential under this Code section to a person who is not authorized by law to receive such information shall upon conviction be subject to a civil penalty not to exceed $1,000.00.

Following the issuance of the subpoena, Saks filed a complaint against the Board in Fulton Superior Court, requesting a temporary restraining order and interlocutory and permanent injunctive relief, until such time as the Board and Mendola, or any other accounting firm that the Board may appoint, agreed to provide minimal protection of its proprietary documents.

The Board then issued a contempt citation, pursuant to OCGA

§ 48-5-300, for failure to produce the requested records. Saks thereafter filed a motion to quash the subpoena and a motion for protective order in the alternative to granting plaintiff's motion for a temporary restraining order.

After holding a hearing, the trial court refused to hold Saks in contempt and granted its motion for a protective order until such time as the parties can agree on a method which will protect Saks' confidential business records from disclosure. The court reasoned that while OCGA § 48-5-314 (a) (1) obligated the Board not to disclose any of the confidential records obtained during an audit, it was not certain that this Code section applied to third parties, such as Mendola.

This issue was resolved in *Eckerd*, supra at 455-456. In that case, Eckerd appealed the trial court's order finding it in contempt of court for failing to comply with the Board's subpoena. Eckerd argued, inter alia, that the contract with Mendola violated its right to confidentiality under OCGA § 48-5-314. We held therein that as OCGA § 48-5-314 (a) (1) allows personnel authorized by appropriate tax administrators to access materials otherwise protected as confidential thereunder and that boards are authorized to contract for audit services under OCGA § 48-5-298, it necessarily follows that to enter into such a contract "authorizes" the contractor to access the confidential materials essential to the performance of the contract. While no disclosure was at issue in *Eckerd*, we noted therein that OCGA § 48-5-314 (b) makes the disclosure of confidential materials to unauthorized persons subject to a civil penalty not to exceed $1,000. Mendola is bound by OCGA § 48-5-314 (a) (1).

The Board argues that the trial court erred in granting a protective order to Saks because confidentiality is protected under OCGA § 48-5-314, the employment contract between Mendola and Fulton County protects Saks, and it is further protected by Mendola's ethical responsibilities as a CPA.

It is patently obvious that professionals are not immune from being the subject of appropriate protective orders because of the fact that they may be bound by professional standards. We note also that there is no client relationship between Mendola and Saks, and the record contains no documentation of the standards the Board contends protects Saks. This argument is without merit.

Similarly, the contract between Mendola and Fulton County provides no protection to Saks which was not a party to the contract. We note that the Board raises this issue for the first time on appeal; however, we will exercise our discretion and address the matter. Saks was clearly not a third-party beneficiary under the subject contract, and it did not know of its existence until litigation was initiated. The contract expressly provides for the indemnification of the

Board by Mendola, but does not address third-party damages. The intent of the contract as a whole must be considered, and it is difficult to conceive how a contract between the Board and an auditor could be construed to be for the benefit of the taxpayer. See *American Fletcher Mtg. Co. v. First American Investment Corp.*[6] This argument is without merit.

While the Board is correct that the confidentiality requirements of OCGA § 48-5-314 are applicable to Mendola, its contention that this fact precludes the trial court from granting a protective order to Saks is erroneous. While the trial court is barred from issuing a protective order which violates statutory law, such as OCGA § 48-5-314, it has full authority under OCGA § 23-4-31 to mold its decrees to meet the demands of each situation it faces. The trial court's determination as to the issuance of a protective order is a matter of the judge's discretion.

We therefore review a trial court's grant of a motion for a protective order for abuse of discretion. *Clayton County Bd. of Tax Assessors v. Lake Spivey Golf Club.*[7] Absent an abuse of discretion, this court will affirm the actions of the trial court. See *Torok v. Mize.*[8]

Here, the trial court erred in issuing its protective order until such time as the parties entered into a confidentiality agreement. The trial court does have full authority, however, to determine what restrictions and limitations are appropriate under the circumstances so long as its ruling does not conflict with the rights of the parties under applicable law. This court affirmed the trial court's ruling in *Wal-Mart*, supra, prohibiting Mendola from either retaining or making copies of any documents produced by Wal-Mart in that case. Neither the Board nor its agent has any authority to use the taxpayer's documents for purposes other than those specifically provided by law and are precluded from disclosing such material to third parties. The Board is not authorized to issue subpoenas for discovery purposes or to inappropriately coerce taxpayers into "voluntarily" providing copies of private documents contrary to law either directly or through the acts of its agents. It is within the authority of the court to issue any protective order it deems reasonable and necessary for the protection of the parties, consistent with this opinion. The parties are free of course to enter into an agreement on the terms of any protective order, subject to the approval of the trial court.

This court is troubled by the manner in which the Board and

---

[6] *American Fletcher Mtg. Co. v. First American Investment Corp.*, 463 FSupp. 186 (N.D. Ga. 1978).

[7] *Clayton County Bd. of Tax Assessors v. Lake Spivey Golf Club*, 207 Ga. App. 693, 695 (428 SE2d 687) (1993).

[8] *Torok v. Mize*, 164 Ga. App. 357 (296 SE2d 738) (1982).

Mendola are conducting taxpayer audits. The record reflects that Mendola has contracts with 26 Georgia taxing authorities, plus other governmental entities, and conducts approximately 3,000 audits per year for taxing authorities performed by 25 employees. It is clear from the record in this case that the Board maintains no supervision over Mendola in the performance of its audits or in the handling of taxpayer's documents. Mendola maintains Board stationery and subpoenas of the Board and of 31 other Georgia counties. The chairperson of the Fulton County Board of Assessors was not even aware that Mendola was conducting audits for the Board until he showed up at a Board meeting a few months before her deposition. In her deposition, the chairperson testified as follows:

> Q. [By appellee's attorney] What is your understanding of what [Mendola is] supposed to do?
> A. I don't really know. I haven't read the contract.
> Q. As chairperson, do you not have a general understanding of what —.
> A. I did not sign the contract. I was not a party to that contract. I was not involved with procuring those services. I'm not familiar with the scope of services.

Deposition of Chairperson Pamela Smith, p. 13, lines 10-19.

> Q. Based on your testimony, I am going to assume that you don't have any idea of what Mr. Mendola actually does when he does an audit for the County.
> A. No, I don't.
> Q. Do you know if the Fulton County Board of Tax Assessors has actually given him its letterhead to write letters on?
> A. I don't know that for sure.
> Q. Do you know if when he does an audit for the Board, if he's the taxpayer's primary contact with the Board?
> A. I don't know.

Deposition of Chairperson Smith, p. 17, lines 17-25, and p. 18, lines 1-3.

> Q. Do you know what kind of supervision the Board maintains over Mr. Mendola when he's doing an audit?
> A. No.
> Q. Do you know if it maintains any supervision over Mr. Mendola when he does an Audit? . . .
> A. No, I don't know.

Deposition of Chairperson Smith, p. 18, lines 19-25, and p. 19, lines 1-2.

The chairperson testified that she had not seen a single report that had been prepared by Mendola.

The chairperson was unaware of any safeguards the Board takes to protect the confidentiality of taxpayer records. She testified as follows:

Q. Do you know if the Board of Tax Assessors takes any steps to preserve the confidentiality of any records a taxpayer produces?
A. I don't know.
Q. You don't know of any policies that the Board has in place?
A. I'm not aware, huh-uh.
Q. So you don't know if the Board prohibits an outside auditor from making copies, from distributing them to other people? You just don't have any idea?
A. I have no idea.

Deposition of Chairperson Smith, p. 30, lines 2-12.

The Board acknowledges that it has no control over what Mendola does with the taxpayers' documents it receives. Documents and subpoenas prepared by Mendola are perfunctorily signed by the chairperson without meaningful inquiry. She testified:

Q. Did you ask any questions when they presented [the subpoena] to you about what it was for?
A. Uh-huh.
Q. What did you ask?
A. What was it for?
Q. What did they tell you?
A. Subpoena for the production of evidence.
Q. Did you ask why it was necessary?
A. No.
Q. Did you ask what documents they wanted?
A. No.
Q. Did you ask if the taxpayer made any objection to producing the stuff ? . . .
A. No.
Q. Were you told that?
A. No.

Deposition of Chairperson Smith, p. 20, line 25, and p. 21, lines 1-17.

The cavalier fashion in which taxpayer audits are being handled and the potential for abuse therein are causes for concern. These are matters which should be reviewed by the Georgia Legislature and

other appropriate government entities.

The Board also argues that the trial court erred in finding Saks was not in contempt for failing to honor its subpoena issued under OCGA § 48-5-300. This issue is controlled by our ruling in *Presley v. Payne*,[9] where, under similar facts to the present case, this court held that "no hearing was scheduled in which the taxpayer was required to appear but the county board of tax assessors was merely investigating 'for the purpose of examination' in 'its investigation of the tax liability of (the taxpayer).'" The trial court had held in *Presley* that the subpoena was issued in connection with their review of the personal property return of the taxpayer, and since Code Ann. § 91A-1441, now OCGA § 48-5-300, required such subpoenas to be served upon the taxpayer five days before the day upon which any hearing by the board is scheduled and at which the attendance of the party or witness or the production of such document is required, it was premature to issue the subpoena for the documents when no hearing was scheduled by the board. The court then found that the taxpayer was not guilty of contempt and denied the application. This court affirmed the trial court's holding. See *Presley*, supra.

The Board's argument that *Wal-Mart*, supra, controls this case is without merit. In *Wal-Mart*, an appeal from a finding of contempt for failure to comply with a subpoena from the board of tax assessors, Wal-Mart argued that the contract between the board and Mendola, as implemented, constituted an unlawful delegation of the board's authority. The opinion of this court in *Wal-Mart* is not in conflict with the holding here, and in fact, both opinions rely on *Eckerd*, supra. Wal-Mart further argued that because of the volume of government entities Mendola represented, there was a great potential for abuse but failed to point to any example thereof. This court rejected Wal-Mart's arguments, but the same issues are not involved in the present case. In fact, in *Wal-Mart* the trial court had granted a protective order for the taxpayer which was affirmed by this court. Any other argument of the Board is either moot or without merit.

For the above reasons, we vacate the trial court's order and remand this case for further proceedings consistent with this opinion.

*Judgment vacated and case remanded. Eldridge, J., concurs. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

Although I agree with the majority's view of the broad powers and wide discretion of trial courts generally in these matters, I write

---

[9] *Presley v. Payne*, 163 Ga. App. 89 (294 SE2d 199) (1982).

separately to express my view that the trial court's resolution of this dispute by directing Saks and Mendola to draft a confidentiality agreement for the documents in dispute was within the powers and discretion of the trial court in this case. Nevertheless, I also concur with the disposition of this case because the case must be returned to the trial court in any event.

DECIDED MARCH 29, 2001.

*Overtis H. Brantley, Vernitia A. Shannon, Rodney T. Floyd, Brenda D. King*, for appellant.

*Webb, Tanner & Powell, Steven A. Pickens, Matthew P. Benson*, for appellee.